UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
_____

D.S., by and through his Mother
and Next Friend, S.S.,

        Plaintiff,

v.

WAYNE RESA, DETROIT PUBLIC
SCHOOLS COMMUNITY DISTRICT,
AND HAMTRAMCK PUBLIC SCHOOLS,
DETROIT WAYNE MENTAL HEALTH
ASSOCIATION, AND MICHIGAN DEPARTMENT
OF HEALTH AND HUMAN SERVICES,

        Defendants.
_____

Case No. _____

Hon. _____

MICHIGAN PROTECTION AND
ADVOCACY SERVICE, INC.
Erin Diaz (P 80388)
Mark Cody (P42695)
Attorneys for Plaintiff
4095 Legacy Parkway, Suite 500
Lansing, MI 48911
(517) 487-1755
ediaz@mpas.org
mcody@mpas.org
_____

**COMPLAINT FOR DECLARATORY JUDGMENT AND FOR
PRELIMINARY AND PERMANENT INJUNCTION**

**INTRODUCTION**

      Plaintiff D.S., a minor, by and through his mother and next friend S.S., brings this action to determine which entity shall be responsible to submit payment

for Plaintiff's residential placement as required by a Resolution Agreement duly executed among the Plaintiff and the Districts and then mandate such payment. In support of this Complaint, Plaintiff alleges as follows:

### A.   JURISDICTION AND VENUE

1. Plaintiff asserts a civil claim to enforce rights ensured by the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*

2. This Court has federal question jurisdiction over Plaintiff's claim pursuant to 28 U.S.C. § 1331, and pursuant to the jurisdiction granted to enforce IDEA Resolution Agreements in 20 U.S.C. § 1415(f)(1)(B)(iii)(II).

3. This Court has jurisdiction over Plaintiff's declaratory judgment request pursuant to 28 U.S.C. § 2201.

4. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b), because the acts and omissions giving rise to Plaintiff's claim occurred in Wayne County, Michigan.

### B.   PARTIES

5. Plaintiff is a 16-year-old student who resides in Hamtramck Public School District.  Plaintiff has been diagnosed with disabilities, and he is eligible for special education services under the IDEA. Due his to educational and behavioral needs, experts have determined that D.S. requires residential treatment to be successful. D.S. continues to have difficulties in the community and needs residential placement to provide his educational services as well.

6. Defendant, Hamtramck Public School District ("Hamtramck") is one of the local education agencies responsible for providing Plaintiff with a free and appropriate public education ("FAPE") as required by the IDEA.

7. Defendant, Hamtramck, contracted with Defendant, Detroit Public Schools Community District ("DPSCD") to provide special education services to Plaintiff. Accordingly, Defendant, DPSCD, is one of the local education agencies responsible for providing Plaintiff with a FAPE as required by the IDEA.

8. Defendant, Wayne RESA, is a regional educational service agency, or intermediate school district ("ISD") as defined in M.C.L. 380.4(3) with offices in Wayne County, Michigan, containing both DPSCD and Hamtramck. Wayne RESA is run by an intermediate school district board, which has "the authority to place in appropriate special education programs or services a student with a disability for whom a constituent district is required to provide special education programs or services under section 1751." M.C.L. 380.1711. Additionally, Wayne RESA receives federal funding to provide special education services. Michigan Administrative Rules for Special Education ("MARSE") R 340.1801.

9. The three preceding Defendants, collectively the Districts, are signatories to the Resolution Agreement that is the subject of this Complaint.

10. Defendant, Detroit Wayne Mental Health Authority ("DWMHA" of "CMH") is the community mental health provider for Wayne County, Michigan. DWMHA is a prepaid inpatient health plan ("PIHP"), which contracts with

3

Michigan Department of Health and Human Services to deliver mental health services paid for largely by Medicaid.

11. Defendant, Michigan Department of Health and Human Services, Adoption Subsidy Office, provides funding through the adoption medical subsidy program to pay for temporary residential services in the event a child has severe emotional or behavioral concerns resulting in treatment goals, which are not able to be met in the family setting. This program is administered under MCL 400.115h.

### C. FACTS

12. Since at least February of 2015, the Districts have failed to provide Plaintiff with a free appropriate public education ("FAPE"), as required by the IDEA.

13. In February 2017, Plaintiff filed an administrative complaint and request for expedited due process hearing against the Districts, arising from the Districts' failure to provide Plaintiff with a FAPE. The Districts responded by filing an administrative complaint and request for due process hearing against Plaintiff.

14. In accordance with the resolution session provisions of the IDEA, 20 U.S.C. §1415(f)(1)(B), Plaintiff and the Districts participated in resolution sessions regarding their administrative complaints.

15. On May 26, 2017, Plaintiff and the Districts signed a Settlement Agreement to resolve the administrative complaints.

16. The Settlement Agreement is an IDEA Resolution Agreement within the meaning of 20 U.S.C. §1415(f)(1)(B) and 34 C.F.R. §300.510(d). A true and accurate copy of the Resolution Agreement is attached to this Complaint as Exhibit A, which has been redacted.

17. The Resolution Agreement requires the Districts to contribute a sum not to exceed $38,880.30 for the placement of Plaintiff in a residential treatment facility or hospital. Exhibit A, ¶ # 2.

18. The Resolution Agreement states that the Districts are "the payer of last resort for the residential treatment facility or hospital." *Id*.

19. The Resolution Agreement states that Plaintiff will continue to pursue all other sources of payment and payers.

20. CMH services are provided through Medicaid, which is considered a payer of last resort.

21. Medical subsidy through the Adoption Subsidy office funds residential placement outside of the home, but is the payer of last resort according to MCL 400.115h.

22. Pine Rest Christian Mental Health Services ("Pine Rest") is a residential treatment facility that can provide treatment for Plaintiff.

23. On or about August 2, 2017, Pine Rest notified Plaintiff that residential treatment at Pine Rest would likely be available for Plaintiff within the month of August 2017.

24. On August 2, 2017, Plaintiff's counsel alerted the Districts that Pine Rest anticipated admitting Plaintiff for residential treatment within the month of August 2017.

25. The Districts did not respond to Plaintiff's counsel's August 2, 2017 communication.

26. Throughout numerous phone conversations during the summer, Pine Rest advised Plaintiff's counsel that D.S. would not be admitted into residential treatment at Pine Rest unless payment for Plaintiff's placement was secured at the time of admission by submission of an ad hoc payment contract.

27. In the event that payment is not secured within a week of Pine Rest contacting Plaintiff, stating they are prepared to admit D.S., his spot will be given to the next individual on the waiting list, and D.S. will continue to miss out on the education and treatment he needs until funding is secured.

28. On August 9, 2017, Plaintiff's counsel requested that the Districts submit the ad hoc payment contract to Pine Rest.

29. On August 18, 2017, the Districts responded to Plaintiff's request and demanded that Plaintiff produce documents to substantiate that Plaintiff had pursued and exhausted all other sources of payment and payers.

30. The Resolution Agreement does not require Plaintiff to exhaust all other sources of payment and payers, nor does the Resolution Agreement require Plaintiff to produce the documentation demanded by the Districts.

31. D.S.' CMH treatment team recommends that he receive services in a residential program.

32. On August 24, 2017, Plaintiff's counsel requested that residential treatment services be authorized and added to D.S.' IPOS.

33. On August 28, 2017, the adoption subsidy packet was submitted to the Adoption Subsidy Office in order to consider residential treatment services.

34. On September 5, 2017, CMH confirmed that it will fund residential treatment services once the Districts have exhausted their funds and any adoption subsidy funds have been exhausted.

35. Plaintiff's counsel, in a letter dated September 8, 2017, delivered via email and facsimile, updated the Districts that the expected date of admission to Pine Rest would be the week of September 11, 2017, and that no other sources of payment or payers would be available to submit the ad hoc payment contract.

36. The Districts responded to the September 8, 2017 letter on September 14, 2017. In that correspondence, the Districts stated that they understood that PsyGenics would fund D.S.' placement, which is a misstatement of the present situation.

37. On September 20, 2017, Pine Rest contacted Plaintiff's counsel and explained that D.S.' admission date would have to be postponed again due to staffing shortages. The anticipated admission date would be at the beginning to the middle of October.

7

38. On September 25, 2017, Plaintiff was notified by phone that D.S.' application for residential services through Adoption Subsidy was denied. Plaintiff received the written denial letter later in the week.

39. On Thursday, September 28, 2017, Plaintiff's counsel reached out to the Districts' counsel to update him regarding the status of the Adoption Subsidy request, but was unable to reach him.

40. On Monday, October 2, 2017, Plaintiff's counsel notified the Districts' counsel of the anticipated filing of this Complaint in a phone call. Plaintiff's counsel informed Districts' counsel that the Adoption Subsidy request had been denied and reiterated that CMH would not pay for residential services until the Districts' funds were exhausted.

41. On Monday, October 2, 2017, Plaintiff's counsel sent a letter to Districts' counsel, delivered via email and facsimile, requesting assurances that the amount of $38,880.30 would be deposited into an IOLTA account. The Districts have not provided those assurances, necessitating the filing of this Complaint.

42. Plaintiff's counsel to notified CMH that this action would be filed to determine the order of payment.

43. Plaintiff's counsel notified counsel for Adoption Subsidy that this action would be filed to determine the order of payment.

44. Plaintiff's counsel postponed filing the Complaint in an attempt to resolve the matter informally with all parties.

45. Plaintiff and his family lack sufficient funds to submit the ad hoc payment contract to Pine Rest.

### COUNT I: DECLARATORY JUDGMENT

46. Plaintiff incorporates by reference the allegations in paragraphs 1 through 45 of this Complaint as if fully stated herein.

47. Plaintiff has fully complied with all his obligations under the Resolution Agreement.

48. The Districts' failure to submit the ad hoc payment contract to Pine Rest constitutes a breach and repudiation of the Resolution Agreement.

49. An actionable and justiciable controversy now exists between Plaintiff and Defendants concerning the rights, duties, and obligations prescribed by the Resolution Agreement.

50. Absent a declaratory judgment confirming the parties' rights, duties, and obligations under the Resolution Agreement, Plaintiff's inpatient residential treatment opportunity currently available at Pine Rest will be further postponed.

51. Plaintiff is entitled to a declaratory judgment determining the order in which the parties named in the Resolution Agreement will contribute to D.S.' residential treatment services.

### COUNT II: PRELIMINARY AND PERMANENT INJUNCTION

52. Plaintiff incorporates by reference the allegations in paragraphs 1 through 51 of this Complaint as if fully stated herein.

53. Plaintiff has no adequate remedy at law.

54. Absent preliminary and permanent injunctions that require a Defendant to immediately submit the ad hoc payment contract to Pine Rest, Plaintiff will suffer and continue to suffer irreparable harm.

55. Plaintiff is likely to succeed on the merits.

56. Defendants will not suffer hardship by the issuance of a restraining order requiring them to submit the ad hoc payment contract to Pine Rest.  The balance of equities between the parties favors issuance of the relief sought.

57. The public interest will be served by issuing an injunction in this case. *City of Pontiac Retired Employees Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014).

58. Plaintiff is entitled to a preliminary and permanent injunction enforcing Defendants' obligation to contribute to the cost of Plaintiff's placement in a residential treatment facility or hospital.

## REQUESTED RELIEF

A) Enter a Declaratory Judgment confirming that the Resolution Agreement requires the Districts to immediately submit the ad hoc contract to Pine Rest.

B) Enter a Preliminary and Permanent Injunction requiring the Districts to immediately complete and submit the ad hoc payment contract to Pine Rest Christian Mental Health Services and enjoining the Districts from any future delay

or refusal to contribute to the cost of Plaintiff's placement in a private residential treatment facility or hospital, up to and including the dollar amount specified in the Resolution Agreement.

      C)     Alternatively, enter a Preliminary and Permanent Injunction requiring CMH or Adoption Subsidy to submit any required documentation to Pine Rest Christian Mental Health Services to begin funding D.S.' residential treatment without delay and enjoining these Defendants from any future delay or refusal to contribute to the cost of Plaintiff's placement in a private residential treatment facility or hospital.

      D)     Waive or excuse the filing of any security or bond by the Plaintiff.

      E)     Award such other relief as the Court deems just and appropriate.

      Respectfully submitted,

Dated: October 3, 2017

s/ *Erin Diaz*
Erin Diaz (P80388)
Mark Cody (P42695)
Michigan Protection and Advocacy Service, Inc.
Attorneys for Plaintiff
4095 Legacy Parkway, Suite 500
Lansing, MI 48911
(517) 487-1755
ediaz@mpas.org
mcody@mpas.org